SSS:BGK
F. #2016R00667

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

17M380

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

FILED UNDER SEAL

UNITED STATES OF AMERICA

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANTS
(T. 31, U.S.C., § 5324(a)(1))

- against -

JANG Y. KIM,
    also known as "James Kim," and

CHENG YAN WANG,
    also known as "Dennis Wang,"

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

THOMAS R. CRIBBINS, being duly sworn, deposes and says that he is a Special Agent with the Internal Revenue Service ("IRS"), duly appointed according to law and acting as such.

Upon information and belief, on or about and between August 2013 and September 2015, within the Eastern District of New York, the defendants JANG Y. KIM, also known as "James Kim" and CHENG YAN WANG, also known as "Dennis Wang," for the purpose of evading the reporting requirements of Title 31, U.S.C., § 5313(a) or any regulation prescribed under such section, did cause or attempt to cause a domestic financial institution to fail to file a report required by Title 31, U.S.C., § 5313(a) and Title 31, C.F.R., § 1010.311.

(Title 31, United States Code, Section 5324(a)(1))

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I have been an IRS Special Agent for approximately 13 years. In my capacity as an IRS Special Agent, I have participated in numerous investigations of criminal activity, including investigations of money laundering under Title 18 of the United States Code and the Bank Secrecy Act under Title 31 of the United States Code. Through my training, education, and experience, I have become familiar with the manner in which the proceeds of illegal activity are laundered and the efforts taken by persons involved in such activity to avoid detection by law enforcement.

2. I am currently working with members of a money laundering task force (the "Task Force") which consists of both federal and local law enforcement officers, and includes the Nassau County Police Department ("NCPD") and the New York City Police Department ("NYPD"). The facts set forth in this affidavit are based in part on my direct participation in the investigation, information that I have learned from my review of documentary evidence and records, and discussions with members of the Task Force, bank personnel and others.

3. As a result of my experience in the area of financial investigations, I am aware of the following:

(a) Domestic financial institutions are required to file a Currency Transaction Report (hereinafter referred to as a "CTR") with the Financial Crimes Enforcement Network ("FinCEN") for each transaction in currency, such as a deposit, withdrawal, exchange of currency or other payment or transfer by, through or to a financial institution, in excess of $10,000, as required by Title 31, U.S.C.,

---

[1] Because this affidavit is submitted only to establish probable cause to arrest the named defendant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

2

§ 5313 and Title 31, C.F.R., § 1010.311.

(b) CTRs are filed on forms that require, among other things, disclosure of the identity of the individual who conducted the transaction and the individual or organization for whom the transaction was completed.

(c) CTRs are required to be filed to assist the United States in criminal, tax and regulatory investigations and proceedings, as stated in Title 31, U.S.C., § 5311 and Title 31, C.F.R., § 1010.301.

(d) Many individuals involved in illegal activities, such as narcotics trafficking, tax evasion and money laundering, are aware of the reporting requirements and take active steps to cause financial institutions to fail to file CTRs to avoid detection of the movement of large amounts of cash.

(e) Pursuant to 31 U.S.C. § 5324, it is a crime for an individual to (a) "cause or attempt to cause a domestic financial institution to fail to file a report required under § 5313(a)," (b) "cause or attempt to cause a domestic financial institution to file a report required under § 5313(a) ... that contains a material omission or misstatement of fact," or (c) "structure or assist in structuring... any transaction with one or more domestic financial institutions" for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a).

(f) JPMorgan Chase Bank is a domestic financial institution, as defined in Title 31, U.S.C., § 5312.

## PROBABLE CAUSE TO ARREST

4. I am presently assigned to an investigation involving the defendants JANG Y. KIM, also known as "James Kim" ("KIM") and CHENG YAN WANG, also known as "Dennis Wang" ("WANG"), for possible money laundering and causing a financial institution to fail to file a CTR. At all times relevant to this affidavit, the defendants, residents of Queens, New York, were employed at the Flushing Branch of JPMorgan Chase Bank (hereinafter "Chase"). Defendant WANG

held the position of a Personal Banker II and defendant KIM held the position of Private Client Banker. During the course of my investigation, I learned from Chase personnel that the defendants, as bankers, were required to complete training programs provided by Chase on the legal requirements of filing CTRs. These training programs also discussed the federal criminal and civil penalties, both for the bank and the employee, of violations of the CTR reporting requirements.

JANG Y. KIM

5. Based on interviews with current and former employees of Chase, I learned that on multiple occasions in or about and between August 2013 and September 2015, KIM approached various tellers at the Chase downtown Flushing branch for the purpose of exchanging small denomination United States currency ("USC") for larger denomination USC. The small dollar currency was typically in $20 denominations and was exchanged for currency in $100 denominations. Based on teller interviews, the currency exchanges were transacted in amounts greater than $10,000 and typically ranged from $15,000 to $30,000 per individual exchange. Further, the investigation showed that KIM transacted approximately $1 million dollars in currency exchanges with tellers at Chase during this time period.

6. During the course of the investigation, law enforcement agents spoke with a cooperating source ("CS") whose information had been corroborated, in part, by independent evidence. According to the CS, a former teller at the Chase's Flushing branch, KIM had approached the CS on at least three occasion in or about and between March 2015 and August 2015 for the purpose of exchanging $20 bills for $100 bills. On each of those occasions, the CS's currency exchange with KIM was more than $10,000, which would have required a CTR to have been filed by Chase. On each of those occasions, no CTR was filed by Chase. According to the CS, the transactions with KIM were done in such a manner as to avoid not only Chase's internal control that would have necessitated the automatic

4

filing of a CTR by Chase, but also from having the CS manually file a CTR since KIM failed to provide the CS with any identifying information regarding the ownership of the currency, account numbers or any information that would have been needed for the filing of that form. Further, on one occasion when the CS did request account information from KIM to fill-out a CTR before the CS would proceed with the currency exchange, KIM stopped that transaction and proceeded to another teller to process that exchange. As a result of the CS requesting filing information for the CTR, the CS stated that KIM never again requested any further currency exchanges from the CS.

       7.      During the course of the investigation, law enforcement authorities spoke with a cooperating witness ("CW") whose information had been corroborated, in part, by independent evidence.[2] CW was a former teller at the Chase's Flushing branch. According to the CW, in or about and between August 2013 and September 2015, the CW exchanged currency in small denominations to large denominations for KIM on approximately 30 occasions. On each occasion, the currency exchanges were in amounts in excess of $10,000, but no CTRs were ever filed. According to the CW, the transactions with KIM were done in such a manner as to avoid not only Chase's internal control that would have necessitated the automatic filing of a CTR by Chase, but also from having the CW manually file a CTR since KIM failed to provide the CW with any identifying information regarding the ownership of the currency, account numbers or any information that would have been needed for the filing of that form.

      8.      In August 2015, Chase management officials confronted the CW concerning KIM and others. A review by law enforcement authorities of messages obtained from the CW's phone

---

[2] CW pleaded guilty to a violation of 31 U.S.C. § 5324 and is cooperating with the government pursuant to a cooperation agreement in the hope of receiving a reduced sentence.

revealed the following text messages, in substance and in part, between the CW and KIM regarding that meeting.

CW: Hey U working today?

KIM: Nahh why wsup

CW: idk why but managers brought me into a room to ask me if im exchanging money for someone

KIM: oh fuck

KIM: R u serious??

KIM: Whatchu say?

KIM: And which managers??

CW: Lol they got me off guard but dont worry I said I dont remember anything large

CW: But scot Michael and walter were in the room asking me

CW: But idk if they gonna ask others

KIM: oh fuck man...Aight thanks

KIM: I really hope the other tellers don't say anything

KIM: Thanks for looking out bro and sorry for the trouble. Lmk if u know any other tellers got asked

CW: I think they were trying to imply you since i said maybe a chinese woman banker but I said I dont know if its her then they said what about cpc or private

CW: But np

KIM: Damn yo I'm madd nervous fuck

KIM: Did they seem serious?

CW: Yeah they told me do lie to them tthat i dont wanna get involved and in trouble

CW: Dont

6

> CW:   Idk why they asked me or how thy know
>
> KIM:  Fuck man I'm madd nervous fuck!!!

Based on my training, experience and the investigation that has been conducted thus far, I believe that the CW informed KIM of the fact that Chase management was aware that the CW exchanged currency for a Chase banker, possibly KIM, and KIM was concerned and nervous about that development because he knew that he had evaded the mandated reporting requirements.

CHENG YAN WANG

9. Based on interviews with current and former employees of Chase, I learned that in August 2015, defendant WANG approached a teller at the Chase downtown Flushing branch for the purpose of exchanging small denomination USC for larger denomination USC. The small dollar currency was in $20 denominations and was exchanged for currency in $100 denominations.

10. During the course of the investigation, law enforcement authorities spoke with the CS whose information had been corroborated, in part, by independent evidence. According to the CS, in or about August 2015, the CS exchanged currency in small denominations to large denominations for WANG on one occasion. Even though the currency exchanged was in an amount in excess of $10,000, no CTR was ever filed. According to the CS, the transaction with WANG was done in such a manner as to avoid not only Chase's internal control that would have necessitated the automatic filing of a CTR by Chase, but also from having the CS manually file a CTR since WANG failed to provide the CS with any identifying information regarding the ownership of the currency, account numbers or any information that would have been needed for the filing of that form.

11. In August 2015, WANG admitted to Chase investigators that he asked a teller at Chase's Flushing branch to do him a favor and exchange $50,000 of small bills to large bills. WANG stated that he was aware that he did not provide his account information for the transaction and that

every cash exchange over $200 must be recorded in the Chase system, which this was not, and that transactions over $10,000 require a CTR to be filed by Chase, which in this case, none was filed. Further, WANG admitted to Chase investigators that the source of the money was from a family member.

Wherefore, it is respectfully requested that an arrest warrant be issued for the defendants JANG Y. KIM, also known as "James Kim" and CHENG YAN WANG, also known as "Dennis Wang," so that they may be dealt with according to law and that the warrants and this application be sealed until further order of the Court. The defendants are currently at liberty, and the government plans to effectuate the arrests in the coming weeks. The government seeks to seal the warrants and this application to ensure that the defendants do not learn that they are about to be arrested and to prevent them from fleeing justice to avoid arrest and prosecution.

THOMAS R. CRIBBINS
Special Agent
Internal Revenue Service

S/ Vera M. Scanlon

Sworn to before me this
27 day of April 2017